

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DENNIS W. HAGGERTY JR.

No. 20 CR 789

Judge John F. Kness

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DENNIS W. HAGGERTY JR., and his attorney, EDMUND P. WANDERLING, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One through Four); and money laundering, in violation of Title 18, United States Code, Section 1957(a) (Counts Five and Six).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count Three, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count Six, which charges defendant with money laundering, in violation of Title 18, United States Code, Section 1957(a). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Three and Six of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count Three of the indictment:

Beginning no later than April 13, 2020, and continuing until in or around November 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant DENNIS W. HAGGERTY JR. knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain and retain money and property by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, in or around March 2020 and in response to the COVID-19 pandemic, HAGGERTY, Partner A, and Partner B, formed At Diagnostics, Inc., to

engage in the business of selling personal protective equipment. HAGGERTY also owned and managed a separate company, At Media, Inc.

### *Hospital A*

In or around late March 2020, Hospital A signed an agreement to purchase approximately 500,000 N95 respirator masks from At Diagnostics for approximately $2,495,000. On or about March 29, 2020, Hospital A requested payment information from Partner B, who in turn asked HAGGERTY to provide an invoice and wire instructions for Hospital A's order.

On or about March 30, 2020, HAGGERTY sent an email to Partner B containing a $2,495,000 invoice for Hospital A for 500,000 3M N95 masks, with the balance due that same day. The invoice instructed Hospital A to wire the invoice balance to a Bank A account (the "Haggerty Account") that HAGGERTY falsely described as an At Diagnostics account. As HAGGERTY knew, the Haggerty Account was a business account in At Media's name for which HAGGERTY was the sole signatory. At Diagnostics did not have an account at Bank A, or at any other bank, at the time.

Partner B emailed the invoice HAGGERTY created to a Hospital A representative later that day. On or about the next day, March 31, 2020, Hospital A wired approximately $2,495,000 to the Haggerty Account, as the invoice instructed. The Haggerty Account had a negative balance before the $2,495,000 wire transfer from Hospital A.

Beginning the next day, on or about April 1, 2020, and continuing until at least June 2020, HAGGERTY withdrew and spent the funds Hospital A transferred into the Haggerty Account for his personal use. Specifically, HAGGERTY withdrew approximately $147,750 in cash in sub-$10,000 increments to avoid federal currency reporting requirements; paid $20,000 to a personal friend; paid approximately $188,534 to credit card companies; and purchased a 2013 Maserati Granturismo, a 2015 Land Rover Range Rover, and a 2017 Maserati Ghibli, for a total of approximately $132,519.

In or around April 2020, Hospital A demanded that At Diagnostics return the $2,495,000 because At Diagnostics failed to deliver any N95 masks. In response, HAGGERTY repeatedly and falsely represented to Hospital A that Bank A had no record of Hospital A's wire transfer into the Haggerty Account when, as HAGGERTY knew, the funds had been wired into the Haggerty Account and he was continuing to misappropriate those funds for his personal use. HAGGERTY also falsely represented to Hospital A that Bank A was running a "skip trace" on Hospital A's purportedly missing wire.

When Partner A and Partner B asked HAGGERTY about the whereabouts of Hospital A's funds, HAGGERTY claimed that Hospital A had never wired the funds to the Haggerty Account. To substantiate this claim, HAGGERTY sent Partner A an altered Bank A statement purporting to show that the Haggerty Account was in the name of "At Diagnostics" and had a $1,000 balance. To further conceal his ongoing

use of Hospital A's funds, HAGGERTY instructed a Bank A employee not to share any information about the Haggerty Account with Partner A.

### *Hospital B*

Hospital B placed two unsuccessful orders for N95 respirator masks with At Diagnostics. On or about March 30, 2020, in connection with Hospital B's first order from At Diagnostics for one million N95 respirator masks for approximately $4,999,000, HAGGERTY created an invoice instructing Hospital B to wire a $2,495,000 deposit to the Haggerty Account, which HAGGERTY again described as an "At Diagnostics" account. At the time, as HAGGERTY knew, At Diagnostics did not have an account at Bank A or at any other bank, and the Haggerty Account was an At Media account under HAGGERTY's control and for which he was the sole signatory. Hospital B requested a formal escrow arrangement instead. When Hospital B requested a PayMode account number for which later payment on the masks could be made, HAGGERTY provided At Media's PayMode account and represented to Hospital B that At Media was the holding company for At Diagnostics. At Diagnostics did not fulfill Hospital B's first order, and Hospital B's deposit for that order, which was sent to a different account, was returned to Hospital B.

On or about June 9, 2020, in connection with Hospital B's second order for 500,000 N95 respirator masks from At Diagnostics, Hospital B's payment system inadvertently released approximately $933,825 to the Haggerty Account. Instead of returning the funds, HAGGERTY used some of the funds from Hospital B to partially

refund Hospital A approximately $250,000 of the $2,495,000 it had wire transferred to the Haggerty Account for masks that were never delivered. When Hospital B discovered its inadvertent payment and demanded that HAGGERTY return the funds, HAGGERTY falsely represented to Hospital B that he would return the funds shortly when, as HAGGERTY knew, he had already converted some of Hospital B's funds for his own use. As of February 2022, HAGGERTY had not returned any of the funds to Hospital B.

As alleged in Count Three, on or about April 21, 2020, for the purpose of executing this scheme, HAGGERTY knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent from HAGGERTY in Illinois to a Hospital A representative in Iowa, which email falsely represented that HAGGERTY had asked Bank A to trace the wire from Hospital A to the Haggerty Account, in violation of Title 18, United States Code, Section 1343.

     b.    With respect to Count Six of the indictment:

On or about April 13, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, HAGGERTY knowingly engaged in a monetary transaction, namely, the transfer of funds from the Haggerty Account at Bank A to another account at Bank A under HAGGERTY's control, in the amount of $1,315,220, which was in and affecting commerce and involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful

activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

More specifically, on or about April 13, 2020, after HAGGERTY learned that Hospital A had demanded that At Diagnostics refund the $2,495,000 it had sent to the Haggerty Account, HAGGERTY transferred from the Haggerty Account approximately $1,315,220 of Hospital A's funds that he had retained as part of the fraudulent scheme described in paragraph 6(a) to other bank accounts for which he was the signatory.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count Three carries a maximum sentence of 20 years' imprisonment. Count Three also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Three the judge also may impose a term of supervised release of not more than three years.

b.     Count Six carries a maximum sentence of 10 years' imprisonment. Count Six also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Six, the judge also may impose a term of supervised release of not more than three years.

c.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 30 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater; a period of supervised release; and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b.      **Offense Level Calculations**.

<u>Count Three</u>

i.      The adjusted offense level for the offense of conviction under Count Three is 23, based upon the following:

ii.      The base offense level is 7, pursuant to Guideline § 2B1.1(a).

iii.      The offense level is increased by 16 levels, pursuant to Guideline § 2B1.1(b)(1)(I), because the loss was more than $1,500,000 but less than $3,500,000.

Count Six

iv.    The adjusted offense level for the offense of conviction under Count Six is 24, based upon the following:

v.    Pursuant to Guideline §§ 2S1.1(a)(1), 2B1.1 cmt. n.(2)(c), and 1B1.5, the base offense level for Count Six is the offense level for the underlying offense from which the laundered funds were derived, minus any Chapter Three adjustments, because (i) defendant committed the underlying offense; and (ii) the offense level for the underlying offense can be determined. Therefore, the base offense level for Count Six is 23, as calculated under Count Three.

vi.    The offense level for Count Six is increased by one level, pursuant to Guideline § 2B1.1(b)(2)(A), because the defendant was convicted under 18 U.S.C. § 1957.

Grouping

vii.    Pursuant to Guideline §§ 3D1.2(c) and 2B1.1 cmt. n. 6, Counts Three and Six are grouped together in a single group because Count Three embodies conduct that is treated as a specific offense characteristic in the Guidelines applicable to Count Six.

viii.    Pursuant to Guideline § 3D1.3(a), the offense level for the Group is the highest offense level of the counts in the Group, which is 24.

ix.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        x.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 21 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months'

imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by

such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that, pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. It is the government's position that, pursuant to Title 18, United States Code, Section 3663A, the total amount owed as restitution is $2,578,825. It is the defendant's position that: (1) pursuant to Title 18, United States Code, Section 3663A, the total amount owed as restitution to Hospital A is $1,645,000; and (2) the conduct described above with respect to Hospital B is relevant conduct, for which defendant agrees to pay additional restitution, totaling $933,825, pursuant to Title 18, United States Code,

Sections 3663(a)(3) and 3664. Accordingly, the parties agree that the total amount of restitution to be ordered by the Court is $2,578,825.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

**Forfeiture**

18.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property

constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

19.    Defendant acknowledges that, as part of his sentence, the Court will decide, by a preponderance of the evidence, whether the government has established the requisite nexus between the offense and any specific property alleged to be subject to forfeiture and the amount of a personal money judgment he must pay.

20.    Defendant agrees to the entry of a personal money judgment in the amount of at least $1,645,000, which represents proceeds traceable to the offense. It is the government's position that the personal monetary judgment should be $2,578,825, which represents the total amount of proceeds traceable to the offense. The government agrees that, if defendant returns funds to the victims prior to sentencing, the government will seek a personal monetary judgment reduced by the amount repaid by defendant.

21.    To satisfy, in part, the personal money judgment, defendant agrees to forfeiture of the following specific property to the United States:

    a.    A    2013    Maserati    Granturismo    bearing    VIN ZAM45MMA5D0067899;

    b.    A    2015    Land    Rover    Range    Rover    bearing    VIN SALGS3TF7FA223609; and

    c.    A 2017 Maserati Ghibli bearing VIN ZAM57RTL3H1228801.

22.     In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the wire fraud offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

23.     Defendant admits that, because the directly forfeitable property, other than the specific property noted above, is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

24.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

25.    Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

26.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 789.

27.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

28.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations.

**Waiver of Rights**

29.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

        a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

                i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

                ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

                iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Appellate rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

30.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

31.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

32.   Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

33.   For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

34.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

35.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

36.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

37.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

38.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

39.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

40.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:  3/1/2022

/s/ John R. Lausch, Jr., by TCM
JOHN R. LAUSCH, JR.
United States Attorney

DENNIS W. HAGGERTY JR.
Defendant

L. HEIDI MANSCHRECK
Assistant U.S. Attorney

EDMUND P. WANDERLING
Attorney for Defendant

24